1

2

3

4

5

6

7

8                           UNITED STATES DISTRICT COURT

9                           NORTHERN DISTRICT OF CALIFORNIA

10

MAN LEE TRADING COMPANY, INC.,                    No. C 08-03887 MHP

11

            Plaintiff,

12                                                **MEMORANDUM & ORDER**

    v.

13                                                **Re: Motion to Dismiss for Lack of Personal
                                                  Jurisdiction or, alternatively, to Dismiss for**
DUVAL MOTORS OF GAINESVILLE INC.,                 **Improper Venue or, alternatively to**

14  a Florida Corporation; and DOES 1-50,         **Transfer Venue for Convenience**
    inclusive.

15

            Defendants.

16  _____/

17

18          Man Lee Trading Company, Inc., ("Man Lee") brought this action against defendant Duval

Motorcars of Gainesville, Inc. d/b/a Duval Motorcars (erroneously sued as Duval Motors of

19  Gainesville, Inc.) ("Duval").  The court granted Duval's administrative request to file a motion to

20  dismiss for lack of personal jurisdiction, or alternatively, to dismissal for improper venue or in the

21  alternative transfer venue for convenience ("motion to dismiss or transfer") prior to an initial case

22  management conference.  Having considered the parties' submissions and arguments, and for the

23  reasons set forth below, the court rules as follows on the motion to dismiss or transfer.

24

25  BACKGROUND

26          Man Lee is a California corporation with its principal place of business in Millbrae,

27  California.  First Amended Verified Compl. ¶ 1.  Man Lee is engaged in the business of buying and

28  selling automobiles, primarily to customers in China.  Id.  Duval is a Florida corporation with its

principal place of business in Gainesville, Florida.  Id. at ¶ 4; Snyder Decl. ¶ 2.  Duval is engaged in

*United States District Court*
For the Northern District of California

**United States District Court**
For the Northern District of California

1    the business of selling automobiles and is primarily a Mercedes-Benz & Jeep automobile dealership.

2    Snyder Dec. ¶ 2.

3         On April 16, 2008, Man Lee entered into a contract with Personal Choice Auto Brokers LLC

4    ("Personal Choice") for the purchase of five Mercedes-Benz automobiles for a total of four hundred

5    twelve thousand and five dollars ($412,005.00).  First Amended Verified Compl. ¶ 7.  Personal

6    Choice is a Florida corporation engaged in the business of buying and selling automobiles, including

7    Mercedes-Benz automobiles, with its principal place of business in Clearwater, Florida.  Id. at  ¶ 4.

8    Three of the five automobiles Man Lee was purchasing from Personal Choice were located at Duval,

9    through an automobile website on the internet.  Id. at 7.  The negotiated price for the three cars at

10   Duval was two hundred forty-seven thousand three hundred ninety-five dollars ($247,395.00).  Id.

11   The agreement was formed and the bills of sale were executed between Man Lee and Personal

12   Choice in San Mateo, California.  Id.; Exh. A (copies of three bills of sale).

13        On April 18, 2008, Man Lee deposited in to Personal Choice's bank account by wire transfer

14   the sum of four hundred twelve thousand and five dollars ($412,005.00) in payment for the five

15   automobiles.  Id. at ¶ 8; Exh. B (copy of bank customer receipt confirming transfer).  Man Lee is

16   informed and believes that Personal Choice gave and/or transferred two hundred forty-seven

17   thousand three hundred ninety-five dollars ($247,395.00) of Man Lee's funds to Duval in order to

18   purchase the three Mercedes-Benz vehicles pursuant to an agreement between Duval and Personal

19   Choice.  Id.

20        Duval entered into an agreement in January 2008 to sell a number of new Mercedes-Benz

21   vehicles to an individual named Arthur Epstein, purporting to act as an agent of Personal Choice.

22   Snyder Dec. ¶ 12; Snyder Reply Dec. ¶ 4.  The agreement was entered into in Florida, payment to

23   Duval was to be made in Florida and delivery of the cars was to be made at Duval's facilities in

24   Florida.  Snyder Reply Dec. ¶ 4.  Because of a Mercedes-Benz policy, Duval obtained Epstein's

25   written assurance in the sales agreement that the cars would not be resold for export.  Snyder Dec. ¶

26   12, Exh. D (copy of sales agreement).  Over the course of several months, Epstein took delivery of

27   some forty-nine Mercedes-Benz vehicles from Duval's dealership in Gainesville, Florida.  Snyder

28   Dec. ¶ 13.

**United States District Court**
For the Northern District of California

1    Subsequent to the delivery of some but not all of the automobiles that Duval agreed to sell to

2    Epstein, Duval became aware that at least thirteen of the vehicles it had already sold to Epstein had

3    been found outside the United States. Id. at ¶ 13. Duval promptly ceased delivery of any further

4    cars to Epstein. Id.

5    On or about April 22, 2008, Man Lee dispatched a delivery contractor from Northern

6    California to go to Duval in Florida to pick up the three Mercedes-Benz automobiles and transport

7    them back to California. Id. at ¶ 10. Duval blocked the purchase and delivery and prevented Man

8    Lee's contractor from taking possession of the three automobiles that Man Lee had purchased. Id.

9    Man Lee subsequently made demand upon Duval for return of the two hundred forty-seven thousand

10   three hundred ninety-five dollars ($247,395.00) held by Duval for the purchase of the vehicles. Id.

11   at ¶ 11. Duval refused to turn over the funds to Man Lee.  Id.

12   Duval was not a party to and had no knowledge of the transactions and dealings between

13   Man Lee and Personal Choice. Snyder Reply Dec. ¶ 5. Duval had no knowledge regarding whether

14   Mr. Epstein and/or Personal Choice ever agreed to resell cars that Mr. Epstein purchased from

15   Duval. Id.

16   Duval did not have business dealings with Man Lee and had no awareness of Man Lee's existence at

17   the time of Man Lee's dealings with Personal Choice. Id. at ¶ 2. Duval has never conducted any

18   form of business with a California customer and has never sold any products or provided any

19   services in California. Snyder Dec. ¶ 2-3. Duval has never applied for or obtained a California

20   business license and does not solicit customers in California. Id. at ¶ 3. Duval does not market to

21   or advertise its business in California. Snyder Reply Dec. ¶ 9. Duval maintains a website which is

22   accessible by anyone with internet access, but the website is informational only, i.e., visitors to the

23   website cannot purchase vehicles or complete a purchase transaction online. Id.

24   On or about April 24, 2008, Duval filed suit in the Circuit Court of the Fourth Judicial

25   District in and for Duval County, Florida, on or about April 24, 2008, alleging breach of contract,

26   fraudulent misrepresentation and seeking indemnification and equitable relief. Id. at ¶ 13. The

27   action named Personal Choice and two other Florida auto brokers that Epstein represented.  Id.

28   Duval deposited four hundred and sixty-two thousand nine hundred and four dollars ($462,904.00),

3

1   representing the funds received from Epstein against future deliveries, in a segregated interest

2   bearing escrow account. Id. The Florida state court issued a restraining order requiring the

3   maintenance of the deposited funds in the escrow account and restricting any withdrawals pending

4   further order of the court. Id.; Snyder Reply Dec. ¶ 8, Exh. E (copy of Order). Neither Epstein nor

5   Personal Choice ever appeared in the action and a default judgment was entered against those

6   defendants on August 13, 2008. Id.

7       Man Lee became aware of the action and placed telephone calls to Duval, informing Duval

8   that it held Man Lee's funds and that Man Lee sought to purchase cars or the return of its funds.

9   First Amended Verified Compl. ¶¶ 15-17. Duval asserts that it is unable to determine the original

10  source of the particular funds from Epstein, namely, whether the funds came from Man Lee or

11  another source. Snyder Dec. ¶ 14. Duval asserts that if it had known that Man Lee was the intended

12  end customer of Mercedes-Benz cars that Duval agreed to sell to Epstein, Duval would not have sold

13  the cars to Epstein because Man Lee is on the Mercedes-Benz "hot list" of companies that have a

14  history of violating Mercedes-Benz export restrictions. Id. at ¶ 10, Exh. C (copy of Mercedes-Benz

15  "hot list"); Snyder Reply Dec. ¶ 7.

16      On August 14, 2008, Man Lee filed the instant action, seeking recovery against Duval for the

17  funds Man Lee paid to Personal Choice for the three undelivered cars, asserting claims against

18  Duval for constructive trust, intentional interference with contract, conversion and unfair

19  competition and illegal business practices under section 17200 of the California Business and

20  Professions Code. See Cal. Bus. & Prof. Code § 17200. See Verified Compl. Man Lee also filed a

21  complaint seeking recovery against Personal Choice in San Mateo Superior Court for the monies it

22  claims it paid to Personal Choice for the three undelivered cars. Snyder Dec. ¶ 10, Exh. A (copy of

23  complaint).

24      On September 17, 2008, Duval filed this motion to (1) dismiss for lack of personal

25  jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(2); (2) alternatively, dismiss for

26  improper venue pursuant to Federal Rule of Civil Procedure 12(b)(3); and (3) in the alternative,

27  transfer venue for convenience pursuant to 28 U.S.C. section 1404(a). Duval argues that it is not

28  subject to personal jurisdiction in California because it lacks any contacts to the state of California

**United States District Court**
For the Northern District of California

4

or to Man Lee.  Duval contends that because it does not have minimum contacts with California

sufficient for personal jurisdiction, this case should be dismissed for lack of personal jurisdiction or

in the alternative lack of proper venue.  Duval asserts that if the instant action is not dismissed, it

should be transferred to the Middle District of Florida state court pursuant to 28 U.S.C. section

1404(a) for the convenience of the parties and witnesses.

On October 23, 2008, Man Lee filed a first amended verified complaint.  Man Lee contends

that the amended complaint incorporates several new jurisdictional allegations, which came to light

after filing the original complaint, that establish that the Northern District of California has personal

jurisdiction over Duval and that venue is proper.  Specifically, Man Lee argues that Duval took

intentional actions which had foreseeable consequences in the Northern District of California.

Duval disputes these allegations and argues that the amended complaint fails to establish grounds to

establish personal jurisdiction over Duval in California.


LEGAL STANDARD

I.      Personal Jurisdiction

Plaintiff bears the burden of proving that the court may exercise personal jurisdiction over

the defendant.  Schwarzenegger v. Fred Motor Co., 374 F.3d 797, 800 (9th Cir. 2004).  If the

jurisdictional challenge is based solely on written papers, plaintiff must make a prima facie showing

of jurisdiction.  Harris Rutsky & Co. Ins. Servs. v. Bell & Clements, Ltd., 328 F.3d 1122, 1129 (9th

Cir. 2003).  While the plaintiff cannot rely solely on the complaint to establish personal jurisdiction,

the court must take uncontroverted allegations as true and resolve conflicts between the facts

contained in the parties' affidavits in favor of the plaintiff.  American Tel. & Tel. Co. v. Compagnie

Bruxelles Lambert, 94 F.3d 586, 588 (9th Cir. 1996).  If, however, the court holds an evidentiary

hearing on the issue, then the burden on the plaintiff increases to a preponderance of the evidence.

Rano v. Sipa Press, Inc., 987 F.2d 580, 587 n. 3 (9th Cir. 1993).

Where there is no federal standard establishing personal jurisdiction, district courts apply the

jurisdictional standards of the state in which the district court sits.  Panavision Int'l, L.P. v. Toeppen,

141 F.3d 1316, 1320 (9th Cir. 1998).  In a diversity action, the question of whether a federal court

United States District Court
For the Northern District of California

can exercise personal jurisdiction over a nonresident defendant "turns on two independent

considerations: whether an applicable state rule or statute potentially confers personal jurisdiction

over the defendant, and whether assertion of personal jurisdiction accords with constitutional

principles of due process." Data Disc, Inc. v. Systems Tech. Assoc., Inc., 557 F.2d 1280, 1286 (9th

Cir. 1977) (citing Amba Marketing Systems, Inc. v. Jobar International, Inc., 551 F.2d 784, 786 (9th

Cir. 1977)).  Federal courts sitting in California may exercise personal jurisdiction over any

nonresident defendant to the extent permitted by due process.  Harris Rutsky, 328 F.3d at 1129

(citing Cal. Civ. Proc. Code § 410.10).  The California Constitution imposes no greater restrictions

on jurisdiction than does the due process clause of the United States Constitution.  Data Disc, 557

F.2d at 1286-87 n. 3.  Accordingly, due process is satisfied if the defendant has "certain minimum

contacts" with the forum state "such that the maintenance of the suit does not offend traditional

notions of fair play and substantial justice."  Int'l. Shoe Co. v. Washington, 326 U.S. 310, 316

(1945) (internal quotations omitted).

        If a nonresident defendant has contacts with the forum state that are "substantial" or

"continuous and systematic," then courts may exercise general personal jurisdiction over the

defendant without regard to whether the action arises from the defendant's activities in the forum

state.  Perkins v. Benguet, 342 U.S. 437 (1952).  If a nonresident defendant's activities within the

forum state are less substantial, then courts may still exercise specific personal jurisdiction where the

action arises out of or is related to the defendant's particular activities within the forum state.

Helicopteros Nacionales de Colombia, S.A. v. Hall, 466 U.S. 408, 414 n. 8 (1984).

II.    Transfer of Venue

        "For the convenience of parties and witnesses, in the interest of justice, a district court may

transfer any civil action to any other district or division where it might have been brought."  28

U.S.C. § 1404(a).  A motion to transfer venue lies within the broad discretion of the district court,

and must be determined on an individualized basis.  Jones v. GNC Franchising, Inc., 211 F.3d 495,

498 (9th Cir. 2000), citing Stewart Org., Inc. v. Ricoh Corp., 487 U.S. 22, 29 (1988).  The burden of

showing that transfer is appropriate is on the moving party.  The Carolina Casualty Co. v. Data

Broad. Corp., 158 F.Supp.2d 1044, 1048 (N. D. Cal. 2001) (Walker, J.).

United States District Court

For the Northern District of California

6

United States District Court

For the Northern District of California

1    District courts use a two-step analysis to determine whether a transfer is proper.  The

2    threshold question under section 1404(a) requires the court to determine whether the case could have

3    been brought in the forum to which the transfer is sought.  28 U.S.C. § 1404(a); <u>Hatch v. Reliance</u>

4    <u>Ins. Co.</u>, 758 F.2d 409, 414 (9th Cir. 1985).  If venue would be appropriate in the would-be

5    transferee court, then the court must make an "individualized, case-by-case consideration of

6    convenience and fairness."  <u>Jones</u>, 211 F.3d at 498.  Among the factors that a district court may

7    consider in deciding whether a transfer is in the interest of justice are: (1) the location where the

8    relevant agreements were negotiated and executed; (2) the state that is most familiar with the

9    governing law; (3) the plaintiff's choice of forum; (4) the respective parties' contacts with the forum;

10   (5) the contacts relating to the plaintiff's cause of action in the chosen forum; (6) the differences in

11   the costs of litigation in the two forums; (7) the availability of compulsory process to compel

12   attendance of unwilling non-party witnesses; (8) the ease of access to sources of proof; (9) any

13   forum selection clause; and (10) relevant public policy of the forum state.  <u>Id.</u> at 498-99, <u>citing</u>

14   <u>Stewart</u>, 487 U.S. at 29-31. This list of factors is non-exclusive.  <u>See id.</u>

15

16   <u>DISCUSSION</u>

17   I.    <u>Personal Jurisdiction (Rule 12(b)(2))</u>

18   Duval asserts that this court lacks personal jurisdiction over it.  The burden of establishing

19   appropriate jurisdiction rests on the party that wishes to invoke the jurisdiction of the federal court.

20   <u>See</u> <u>Data Disc</u>, 557 F.2d at 1285 (<u>citing</u> <u>KVOS, Inc. v. Associated Press</u>, 299 U.S. 269 (1936)).

21   Therefore, the burden is on Man Lee to demonstrate the existence of personal jurisdiction, which

22   may be based on either general or specific jurisdiction.  <u>American Tel. & Tel. Co.</u>, 94 F.3d at 588.

23   General jurisdiction exists when the defendants' contacts with the state are "substantial" or

24   "continuous and systematic," and it requires that the defendants' contacts approximate physical

25   presence within the state. <u>Bancroft & Masters, Inc. v. Augusta Nat'l Inc.</u>, 223 F.3d 1082, 1086 (9th

26   Cir. 2000) (citing <u>Helicopteros</u>, 466 U.S. at 415).  By contrast, specific jurisdiction exists where (1)

27   the nonresident performs some act or consummates some transaction which purposefully avails him

28   of the privilege of conducting activities in the forum so as to invoke the benefits and protections of

7

**United States District Court**
For the Northern District of California

1   the state's laws; (2) the claim arises out of or relates to the defendant's forum-related activities; and

2   (3) the exercise of jurisdiction is reasonable.  Cybersell, Inc. v. Cybersell, Inc., 130 F.3d 414, 416

3   (9th Cir. 1997) (citations omitted).  The purposeful availment requirement is satisfied if the

4   defendant takes some deliberate action within the forum state or creates continuing obligations to

5   forum residents.  Id. at 417.  The defendant need not be physically present in the forum state,

6   "provided that his efforts are purposefully directed toward forum residents."  Id. (internal quotations

7   omitted).

8           Man Lee does not assert that Duval is subject to general jurisdiction.  Rather, Man Lee

9   argues that the court has specific jurisdiction over Duval because Duval took intentional actions

10  which had foreseeable consequences in this forum.  For the court to find the minimum contacts

11  required for due process between Duval, as a nonresident defendant, and this forum state, however,

12  Man Lee must demonstrate that contacts constituting purposeful availment gave rise to the current

13  suit.  See Bancroft & Masters, 223 F.3d at 1088.  This requirement is met with a showing that "but

14  for" the defendants' forum-related conduct, the injury would not have occurred.  Myers v. Bennett

15  Law Offices, 238 F.3d 1068, 1075 (9th Cir. 2001); see also Panavision Int'l, L.P. v. Toeppen, 141

16  F.3d 1316, 1322 (9th Cir. 1998).  The contacts must also be "sufficiently related to the underlying

17  causes of action" and "have some degree of proximate causation to be considered for purposes of

18  jurisdiction." Metro-Goldwyn-Mayer Studios Inc. v. Grokster, Ltd., 243 F.Supp.2d 1073, 1085

19   (C.D. Cal. 2003) (citing Doe v. American Nat'l Red Cross, 112 F.3d 1048, 1051-52 (9th Cir.

20  1997)).

21          Man Lee argues that its claim for recovery against Duval for the funds Man Lee paid to

22  Personal Choice for the three undelivered cars is directly related to Duval's activities in California.

23  Specifically, Man Lee contends that Duval took and retained a California resident's funds without

24  transferring the vehicles to which the funds were identified.  Man Lee further argues that Duval

25  received and retained funds coming from Man Lee, by providing evidence that the bills of sale for

26  the vehicles were executed in California and the bank draft for the purchase of the vehicles was

27  issued in California.  Man Lee also argues that Duval failed to make a full disclosure regarding the

28  true purpose and ownership of the funds at a proceeding in Florida state court.  Man Lee asserts that

1    these actions amount to intentional acts that had foreseeable consequences in California sufficient to

2    establish specific jurisdiction.

3         Duval contends that Man Lee's dealings with Personal Choice in California have no bearing

4    on the question of whether there is personal jurisdiction over Duval.  Duval asserts it is in no way

5    affiliated with Personal Choice and was entirely unaware of Man Lee's dealings with Personal

6    Choice until shortly before the instant suit was filed.  Duval asserts it was unaware of Man Lee's

7    existence at the time of the personal dealings.  Duval points out that it could not have been directing

8    purposeful activities at California by entering into an agreement with Epstein, another Florida

9    resident.  Furthermore, Duval made assurances and put in writing its requirement that Epstein not

10   resell the vehicles to end users such as Man Lee who intend to resell the vehicles outside the

11   contiguous United States.  Duval contends that it was not intentionally taking and would never

12   intentionally take actions to sell its cars to Man Lee in California because the Mercedes-Benz policy

13   did not permit Duval to sell its products to any entity for export reasons.

14        The court agrees with Duval that the dealings between Man Lee and Personal Choice cannot

15   provide a basis for jurisdiction.  They are not only insufficient to create personal jurisdiction over

16   Duval, they are irrelevant.  Duval's intentional act of entering into an agreement with another

17   Florida resident cannot amount to purposeful availment of the forum state of California.  Duval has

18   no relevant contractual relationship with any entity other than Epstein for the purpose of this action.

19   Duval did not involve itself in any vehicle repurchases or resales beyond the original sale of the new

20   automobiles to Personal Choice through Epstein other than requiring that the vehicles not be resold

21   for export reasons.  In that regard, Duval's actions are readily distinguishable from defendants who

22   commit intentional acts of publication outside the state and aimed at an audience in the forum state.

23   See, e.g., World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 297 (1980); Calder v. Jones,

24   465 U.S. 783, 790 (1984).  These cases cited by Man Lee are wholly inapposite to the present issue.

25        The court finds that Man Lee has failed to meet its burden of demonstrating that the court

26   possesses personal jurisdiction over Duval.  See Dole Food Co. Inc. v. Watts, 303 F.3d 1104, 1108

27   (9th Cir. 2002).  Even when taking the uncontroverted allegations as true and resolving all factual

28   conflicts in favor of the plaintiff, this court finds that Man Lee has failed to demonstrate that Duval

**United States District Court**
For the Northern District of California

United States District Court

For the Northern District of California

1    has purposefully directed its activities or consummated transactions in California or with a

2    California resident in a manner such that personal jurisdiction would attach.  See Schwarzenegger,

3    374 F.3d at 802.  Duval had no conduct and connection with California and could not, therefore,

4    reasonably anticipate being haled into court in this state.  World-Wide Volkswagen, 444 U.S. at 297.

5    Because Man Lee has failed to allege activities that amount to purposeful availment of the forum, it

6    cannot establish a prima facie case of specific personal jurisdiction over Duval.  See Doe v. Unocal

7    Corp., 248 F.3d 915, 923 (9th Cir. 2001).  The remaining conditions required for specific

8    jurisdiction need not be addressed.

9         The court does not have personal jurisdiction over Duval.  Where the court lacks personal

10   jurisdiction over the defendant it may dismiss the complaint or transfer the action to a district where

11   personal jurisdiction can be exercised over them.  See 28 U.S.C. § 1631 (where "court finds that

12   there is a want of jurisdiction, the court shall, if it is in the interest of justice, transfer such action . . .

13   to any other such court in which the action . . . could have been brought").  The court now turns to a

14   consideration of a venue transfer.

15   II.    Motion to Transfer

16        In any motion to transfer, the court must address the threshold question of whether this action

17   could have been brought in the Middle District of Florida.  See Hatch, 758 F.2d at 414.  The court

18   finds that Man Lee's action against Duval could have been brought in the Middle District of Florida

19   because that district (1) had proper subject matter jurisdiction, (2) had personal jurisdiction over the

20   defendant Duval, and (3) was a proper venue.  The Middle District of Florida had subject matter

21   jurisdiction based on diversity.  28 U.S.C. § 1332(a).  Complete diversity exists because Man Lee is

22   a citizen of California, and Duval is a citizen of Florida.  Moreover, the amount in controversy

23   exceeds $75,000.  The Middle District of Florida also had personal jurisdiction over Duval because

24   Duval transacts business there.  Fla. Stat. § 48.193.  Venue was proper because in an action founded

25   only on diversity, venue is proper in a judicial district in which any defendant resides at the time the

26   action commences or where a substantial part of the events giving rise to the claim occurred.  28

27   U.S.C. § 1391(a).  Duval resides in the Middle District of Florida because it is subject to personal

28   jurisdiction in that district and in addition, the sale of Duval's vehicles took place in that district.

10

United States District Court

For the Northern District of California

1  Having concluded that Man Lee, although it chose not to, could have filed its complaint against

2  Duval in the Middle District of Florida, the remaining inquiry is whether the requested transfer

3  would enhance convenience and the interests of justice.

4      The factors that courts consider in assessing the convenience and fairness of a motion to

5  transfer venue are similar to the factors in determining reasonableness of exercising jurisdiction.

6  See Bancroft & Masters, Inc., 223 F.3d at 1088.  The factors include: (1) the extent of the

7  defendant's purposeful interjection into the forum state, (2) the burden on the defendant of defending

8  in the forum state, (3) the extent of the conflict with the sovereignty of the defendant's state, (4) the

9  forum state's interest in adjudicating the dispute, (5) the most efficient resolution of the controversy,

10  (6) the importance of the forum to the plaintiff's interest in convenient and effective relief, and (7)

11  the existence of an alternative forum.  Id.  In all cases, the defendant bears the burden of

12  demonstrating unreasonableness and must put on a "compelling case."  Id., citing Burger King Corp.

13  v. Rudzewicz, 471 U.S. 462, 476-77 (1985)).

14      Duval asserts that if the action is not dismissed, it should be transferred for reasons of

15  convenience.  According to Duval, the balance of convenience, to both parties and witnesses, clearly

16  tips in favor of the Middle District of Florida as the forum in which to resolve the issues.  Duval

17  argues that the agreement between Duval and Personal Choice for sale of the vehicles took place in

18  Florida and Duval received the funds from Personal Choice in Florida.  Duval notes that its

19  principal place of business is in Florida and points out Epstein is also located in Florida.  Duval

20  notes that Florida was the state in which all of its cars are sold.  Finally, Duval asserts that all of its

21  records are located in Florida. Consequently, according to Duval, it would be far more convenient

22  for this action to proceed in the Middle District of Florida.  The court agrees.

23      Although the court could dismiss rather than transfer this action under section 1404(a), the

24  court declines to do so, finding transfer more appropriate.  The court finds that the factors to be

25  considered for a transfer to a forum that is more convenient weigh heavily in favor of transferring

26  this action to the Middle District of Florida.  Moreover, because Duval has already filed a related

27  suit and deposited funds in an escrow account in Florida, it is a logical choice for transfer of this

28

1 case. Overall, the interests of justice and convenience would best be served by transferring this

2 action to Florida.

3 CONCLUSION

4   For the foregoing reasons, the court **GRANTS** Duval's motion that this court lacks personal

5 jurisdiction and, treating defendant Duval's motion as a motion to transfer under 28 U.S.C. section

6 1404(a), transfers this action to the United States District Court for the Middle District of Florida

7 for all further proceedings. The Clerk of Court is instructed to transfer forthwith the file in this

8 action to the Clerk of the United States District Court for the Middle District of Florida.

9

10   **IT IS SO ORDERED.**

11

12 Dated: January 5, 2009

13   MARILYN HALL PATEL
   United States District Court Judge
14   Northern District of California

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**United States District Court**
For the Northern District of California

12